UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JAMIE BROAD | CIVIL ACTION NO. 22-0252 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| NATIONAL OILWELL VARCO, LP | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant National Oilwell Varco, LP's ("NOV") Motion to Compel Arbitration and to Dismiss in Response to Plaintiff's First Amended Complaint. See Record Document 10. Plaintiff Jamie Broad ("Broad") opposes the motion. See Record Document 12. NOV replied. See Record Document 13. NOV asks this Court to enter an order compelling arbitration and dismissing the above captioned matter with prejudice. For the reasons set forth below, NOV's motion is hereby **GRANTED IN PART AND DENIED IN PART**.

**BACKGROUND**

This case arises from an employment relationship between Broad and NOV. Broad started working for NOV in 2007, and began working for NOV's Shreveport, Louisiana, office in or about 2010. See Record Document 8 at 3. His most recent job title was "Global Products Line Manager." Id. Broad brought this action against NOV challenging the enforceability and validity of the Intellectual Property, Confidential Information, and Non-Solicitation Agreement ("the Agreement"). See Record Document 8 at 1. NOV has an Employment Dispute Resolution Program ("EDR Program") which Broad electronically signed on May 17, 2021. See Record Document 10-3 at 11. The EDR Program contains

an arbitration provision under which NOV moves for this Court to compel Broad to arbitrate his claims. See id. at 3.

On March 18, 2022, Broad filed his First Amended Complaint. See Record Document 8. Broad seeks (1) an injunction prohibiting NOV from enforcing the Customer Non-Solicitation Provision, and (2) declaratory judgment as to the Confidentiality Provisions. See Record Document 8 at 5-8. This Court denied NOV's initial Motion to Compel Arbitration and to Dismiss (Record Document 5) without prejudice because Broad amended his complaint. See Record Document 9. NOV re-urged the Motion on April 1, 2022, which is now before the Court.

NOV moves for an order compelling arbitration of Broad's claims and dismissing this action with prejudice. See Record Document 10-1 at 1. In support of its motion, NOV asserts that all the claims asserted by Broad in his Complaint relate to the enforceability and validity of the Agreement and that those claims are subject to the mandatory arbitration provision contained in NOV's EDR Program. See id. at 5.

NOV argues that under the required two-step analysis, Broad's electronic signature agreeing to the EDR constitutes a valid arbitration agreement and the instant dispute falls within the scope of the arbitration agreement as it is a claim, dispute, or controversy involving legally protected rights that arise out of or relate to Broad's employment and/or the cessation of his employment. See Record Document 10-1 at 3-4. Additionally, NOV argues that Broad's claims challenging the validity and enforceability of the Agreement do not fall within the limited exceptions included in the agreement. Those exceptions are:

> (1) claims for workers' compensation or unemployment benefits; (2) claims for benefits under a benefit plan or

> program that provides its own process for dispute resolution such as with many ERISA plans; (3) claims seeking injunctive relief due to unfair competition, the use or unauthorized disclosure of trade secrets or confidential information or the breach of non-disclosure or non-competition covenants; (4) actions to enforce the EDR Program, compel arbitration or enforce or vacate an arbitrator's award under the EDR Program; or (5) as otherwise required by applicable federal, state, or local law.

See Record Document 10-3 at 3. Claims that are not based in law or equity are also not subject to arbitration. See id. NOV then notes that it is not aware of any federal statute or policy that renders the claims nonarbitrable, satisfying the second step of the inquiry. See Record Document 10-1 at 5.

In response, Broad asserts that the arbitration provision within the EDR is illusory. See Record Document 12 at 6. Alternatively, Broad argues that the Court lacks jurisdiction to compel Broad to arbitrate in Texas as Section 4 of the FAA requires that the order compelling arbitration "be within the district which the petition for an order directing such arbitration is filed." Id. In the further alternative, Broad argues that a stay or administrative closure, rather than dismissal, is the proper remedy under Section 3 of the FAA and the circumstances of the instant case. See id.

In its reply, NOV argues that the EDR Program is not illusory since NOV's ability to modify or terminate the arbitration agreement is limited as allowed under Texas Jurisprudence. See Record Document 13 at 1. Additionally, NOV states that it has not asked this Court to compel arbitration in Texas, and that it is prepared to arbitrate Broad's claims wherever Broad would like, as the agreement states that the parties can "agree otherwise" as to a location for arbitration. Id. at 4. NOV further argues that Broad's claim

for injunctive relief is premature and should be considered as a declaratory judgment action as to the enforceability of the Non-Solicitation Provision. See id. at 5-6.

## LAW AND ANALYSIS

Section 2 of the Federal Arbitration Act ("FAA") states, in pertinent part:

> A written provision in a . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. If a district court is presented with a dispute "upon any issue referable to arbitration under an agreement in writing for such arbitration," the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." Id. § 3.

In determining whether a party may be compelled to arbitrate, a district court must employ a two-step analysis. See Jones v. Haliburton Co., 583 F.3d 228, 233–34 (5th Cir. 2009). First, the district court must determine whether the party has agreed to arbitrate the dispute. This question is subdivided into two parts: "(1) is there a valid agreement to arbitrate the claims, and (2) does the dispute in question fall within the scope of that arbitration agreement." Id. at 234 (quoting Sherer v. Green Tree Servicing LLC, 548 F.3d 379, 381 (5th Cir. 2008)). If either question is answered in the negative, the party may not be compelled to arbitrate and may proceed with his claims in federal court. If, however, both questions are answered in the affirmative, the district court must consider whether "any federal statute or policy renders the claims nonarbitrable." Id. Because there is a strong federal policy favoring arbitration, the party seeking to invalidate an arbitration

agreement bears the burden of establishing its invalidity. Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 297 (5th Cir. 2004). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25, 103 S. Ct. 927, 941 (1983). If the court concludes that there is a valid agreement to arbitrate and that there are no legal impediments to doing so, then the court must grant the motion. See Signal Ridge Owners Ass'n, Inc. v. Landmark Am. Ins. Co., No. 22-1385, 2023 WL 2090994 at *2 (N.D. Tex. Feb. 17, 2023) (citing Celaya v. Am. Pinnacle Mgmt. Servs., LLC, 2013 WL 4603165, at *2 (N.D. Tex. Aug. 29, 2013) (Fitzwater, C.J.)).

**I.      Whether the Arbitration Agreement is Illusory**

Broad argues that the arbitration provision in the EDR Program he signed is illusory because NOV purportedly reserved the unilateral right to terminate or modify the arbitration provision. See Record Document 12 at 6. In response, NOV argues that the program is not illusory since NOV's ability to modify or terminate the arbitration agreement is limited and allowed under Texas contract law. See Record Document 13 at 1. The relevant provision of the EDR program reads as follows:

> *Modification, Effective Date, and Termination*. No waiver or modification of this Agreement is effective unless made in writing and signed by NOV's General Counsel. This Agreement shall be effective on the day it is received by the employee and may be modified or terminated by the Company upon thirty (30) days' written notice. Any modifications or termination shall be prospective only and shall not apply to any claims for which arbitration already has been requested pursuant to the procedures set forth in this Agreement.

See Record Document 10-3 at 4. Despite the strong federal policy in favor of arbitration, "[g]iven the 'fundamental principle that arbitration is a matter of contract,' to determine whether an agreement to arbitrate is valid, courts apply 'ordinary state-law principles that govern the formation of contracts.'" Carey v. 24 Hour Fitness, USA, Inc., 669 F.3d 202, 205 (5th Cir. 2012). Here, NOV's EDR program adopts Texas law. See Record Document 10-3 at 10.

Under Texas law, an arbitration clause is illusory if one party can "avoid its promise to arbitrate by amending the provision or terminating it altogether." In re 24R, Inc., 324 S.W.3d 564, 567 (Tex. 2010). Put differently, where one party to an arbitration agreement seeks to invoke arbitration to settle a dispute, if the other party can suddenly change the terms of the agreement to avoid arbitration, then the agreement was illusory from the outset. See Carey, 669 F.3d at 205; see also Lizalde v. Vista Quality Markets, 746 F.3d 222, 225 (5th Cir. 2014) (stating "where one party has the unrestrained unilateral authority to terminate its obligation to arbitrate, however, the agreement understandably is illusory"). Therefore, the crux of the issue is whether NOV has the power to make changes to its arbitration policy that have retroactive effect, meaning changes to the policy that would strip the right of arbitration from an employee who has already attempted to invoke it. See Torres v. S.G.E. Mgmt., LLC, 397 Fed.Appx. 63, 68 (5th Cir. 2010) (summarizing several Texas and Fifth Circuit cases as "suggest[ing] that the lack of a notice window before any elimination of the [arbitration] clause becomes effective and the ability to amend the agreement retroactively so as to avoid any promise to arbitrate are factors indicating that the agreement may be illusory").

In re Halliburton Co., 80 S.W.3d 566 (Tex. 2002) is the seminal case on this issue. The Texas Supreme Court held that an employee's arbitration agreement was not illusory because "Halliburton [could not] avoid its promise to arbitrate by amending the provision or terminating it all together." Id. at 570. In Lizalde v. Vista Quality Markets, the Fifth Circuit presented a three-part test to determine whether a "Halliburton-type savings clause sufficiently restrains an employer's unilateral right to terminate its obligation to arbitrate." Nelson v. Watch House Int'l, L.L.C., 815 F.3d 190, 193-194 (5th Cir. 2016). Retaining termination power does not make an agreement illusory so long as that power (1) extends only to prospective claims, (2) applies equally to both the employer's and employee's claims, and (3) so long as advance notice to the employee is required before termination is effective. See Lizalde, 746 F.3d at 226 (citing Halliburton, 80 S.W.3d at 569–70)). The first prong of the test is in dispute.

Broad argues that NOV's savings clause permits it to modify or terminate its commitment to arbitrate as to any claim or dispute, including existing claims and disputes of which NOV is aware, so long as NOV gives notice and arbitration has not already been "requested." Record Document 12 at 12-13. Broad relies on Presta v. Omni Hotels Management Corp., No. 17-0912, 2017 WL 3038219 (S.D. Tex. Jul. 18, 2017). In Presta, the district court found that the savings clause at issue failed to restrict the defendant's unilateral power to modify or terminate the arbitration agreement to "retroactive effect" with respect to claims of which the defendant had prior notice. Id. at *7. The savings clause in Presta stated, in pertinent part, "Further, any modification or revocation will not apply to any claim that has already been submitted under this Program." Id. at *5.

A comparison between the language of the arbitration agreement in Lizalde and the language of the provision at issue is illustrative. In Lizalde, the parties' agreement provided that "Company shall have the right to prospectively terminate [the Arbitration Agreement]. Termination is not effective for Covered Claims which accrued or occurred prior to the date of the termination. Termination is also not effective until ten (10 days) after reasonable notice is given to Claimant." Id. at 224. The Fifth Circuit held that this language sufficiently restrained the employer's unilateral termination power as required by Halliburton, because it restricted termination of the agreement "to prospective claims, [did] not apply to claims which accrued prior to termination, and [was] not effective until ten days after reasonable notice is given to the employee." Id. at 226. The agreement between NOV and Broad states that "any modification or termination shall be *prospective only*," applies equally to both NOV and Broad's claims, and requires thirty (30) days written notice to Broad before modification or termination would be effective. Record Document 10-3 at 4. The Court finds that the "prospective only" qualifier contained in NOV's savings clause is sufficient to meet the first prong of the test under Lizalde, and therefore the agreement is not illusory.

## II.     Jurisdiction

Alternatively, Broad argues that this Court lacks authority to compel him to arbitrate in Texas under the FAA. See Record Document 12 at 15. Broad further argues that the Court cannot force the parties to arbitrate in the Western District of Louisiana, either, as such an order would violate the second "facial" requirement of Section 4. See Record Document 12 at 17. NOV's EDR Program provides:

> The adjudication of all disputes shall take place in the City of Houston, State of Texas, or in the JAMS office that is closest

> to the location where the employee is/was employed when the events giving rise to the dispute to be arbitrated occurred, unless the Parties agree otherwise.

See Record Document 10-3 at 8. Federal law, however, provides that arbitration shall take place "within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. A plain reading of this statute would lead to the conclusion that the Court cannot order arbitration to take place in one of the aforementioned locations, which are outside of the district where the motion to compel arbitration was filed. Broad argues that this provision prevents the Court from ordering arbitration under the EDR Program. See Record Document 12 at 17.

However, "[w]here the party seeking to avoid arbitration brings a suit ... in a district other than that in which arbitration is to take place under the contract," such as Broad did in this matter, "the party seeking arbitration may assert its Section 4 right to have the arbitration agreement performed in accordance with the terms of the agreement." Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins. Co., 524 F.2d 1275, 1278 (5th Cir. 1975). The Fifth Circuit has recognized that enforcing the statute exactly as written "would create a procedural trap by which a party to an arbitration agreement might be deprived of its contractual right to arbitration at the location specified in the agreement." Id. at 1277-78. When a party seeking to avoid arbitration – i.e., Broad – files suit in a district other than the one specified in the arbitration agreement, the party seeking arbitration – i.e., NOV – retains its right to have arbitration take place in accordance with the terms of the agreement. See id.; see also Purdy v. Monex Int'l Ltd., 867 F.2d 1521, 1523 (5th Cir. 1989) ("a district court has the authority to order arbitration outside the district if the party seeking such a result has not waived his choice of forum"). The Court believes that NOV

has not waived its choice of forum and retains its rights to have the arbitration hearing held in a location according to the terms of the EDR Program. The Court notes that NOV states that it "is prepared to arbitrate Broad's claims wherever Broad would like. In other words, the Parties can 'agree otherwise'" as to a location as stated in the EDR Program. See Record Document 13 at 4.

The Court therefore has the authority to compel arbitration and stay the instant litigation under the FAA, even though the parties have agreed to arbitrate their claims outside of this District.

### III.     Two-Step Inquiry

Having found that the arbitration agreement is not illusory and that it has jurisdiction, the Court moves to the two-step analysis mentioned above. Neither party has identified a federal statute or policy that renders Broad's claims nonarbitrable, and the Court knows of none. Thus, the Court turns to the question of whether Broad agreed to arbitrate his claims. Broad clearly agreed to NOV's arbitration policy under the EDR Program, as evidenced by his electronic signature, see Record Document 10-3 at 11, which expressly provides that "employment-related legal disputes will be presented to an outside, impartial arbitrator." Record Document 10-3 at 1.

As to whether the instant dispute falls within the scope of the arbitration agreement, the EDR Program states that "[a]ny and all claims, disputes, or controversies involving legally protected rights that arise out of or relate to your employment (with the limited exceptions listed below) and/or the cessation of your employment must be resolved exclusively by final and binding arbitration." Id. at 3. Broad argues that his claim for injunctive relief regarding the Customer Non-Solicitation Agreement falls within "(3)" of

the exceptions named above. See Record Document 12 at 19-20. The Court finds that the claim does not fall within that exception because it is a "customer non-solicitation provision" rather than a "non-competition covenant." Thus, given the strong presumption of arbitration that applies, the Court finds that Broad's claims sufficiently relate to his employment to be reasonably within the scope of the instant arbitration agreement. In this instance, there exists a valid agreement to arbitrate, and the dispute falls within the scope of that agreement.

### IV.     Whether Dismissal is Appropriate

Broad requests a stay rather than dismissal. See Record Document 12 at 21. Where, as here, all claims asserted fall within the scope of a valid, enforceable arbitration agreement, this Court will administratively close this case to enable the parties to reopen the case if further Court review of any aspect of arbitration is warranted. See Smith v. Spizzirri, 601 U.S. 472, 144 S. Ct. 1173 (2024) (where all claims are subject to arbitration and one or more parties has requested a stay, dismissal is improper); Sewell v. Waitr Holdings, Inc., 2020 WL 208929 (W.D. La. 1/13/2020) (recognizing some ambiguity in Fifth Circuit jurisprudence concerning dismissal of cases upon a finding that all claims are subject to arbitration). Thus, the motion is **denied** as to the dismissal of Broad's claims.

### CONCLUSION

For the reasons discussed herein, the Motion to Compel Arbitration and to Dismiss in Response to Plaintiff's First Amended Complaint (Record Document 10) is hereby **GRANTED** in part based on a finding that all claims by Broad in this suit fall within the scope of a valid, enforceable arbitration agreement executed among the parties and are therefore subject to arbitration.

The Motion is **DENIED** in part insofar as it seeks dismissal of Broad's suit, in lieu of which the Clerk of Court is ordered to administratively close this case in its records without prejudice to the right of either party to reopen the proceedings, vacating any pending scheduling order in this matter.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 8th day of August, 2024.

_____
S. MAURICE HICKS, JR., DISTRICT JUDGE
UNITED STATES DISTRICT COURT